Simon M. HARRISON, Plaintiff,

v.

BOARD OF COUNTY COMMISSIONERS
FOR ADAMS COUNTY, COLORADO,
et al., Defendants.

No. 90–C–27.

United States District Court,
D. Colorado.

April 30, 1991.

**366**

Marc Colin, Lakewood, Colo., for plaintiff.

Marlin Burke, Brighton, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

CARRIGAN, District Judge.

Plaintiff Simon M. Harrison commenced this action for damages asserting claims under 42 U.S.C. § 1983 for alleged deprivations of a constitutionally protected property interest (first claim) and liberty interest (second claim). Defendants the Board of County Commissioners for Adams County and the Adams County Sheriff, Edward J. Camp, have moved for summary judgment. Plaintiff has responded by confessing judg-ment on the first claim and by opposing the motion as to the second claim.

The parties have fully briefed the issues and oral argument would not materially facilitate decision. Jurisdiction exists under 28 U.S.C. § 1331.

### I. Facts.

Plaintiff was hired as a Adams County deputy sheriff in 1985. Prior to 1988, he was suspended without pay for "hacking" the sheriff department's computer system. He later was reinstated.

On October 7, 1988, Deputy Chief Penny Collins discharged the plaintiff for allegedly using excessive force on a prisoner. Plaintiff appealed that decision pursuant to the department's internal grievance rules. After a hearing, the hearing officer recommended that the decision to discharge the plaintiff "not be sustained." (*See* Defendants' brief, Ex. 2.) The hearing officer determined, however, that the plaintiff had violated one of the two personnel rules under which he had been charged. *Id.*

Collins appealed that decision to Adams County Sheriff Edward Camp. Camp disregarded the hearing officer's recommendation and discharged the plaintiff.

Camp notified the plaintiff of his decision by letter. In that letter, Camp erroneously stated that the plaintiff previously had been discharged for using excessive force and asserted that the plaintiff had admitted that his behavior was inappropriate. Camp further stated his opinion that the plaintiff had become a "vicarious liability" to the sheriff's department and that he should seriously consider some other profession. (*See* Defendants' motion, Ex. 4.)

After his discharge, the plaintiff was denied unemployment benefits. At a hearing on an appeal of that decision to the Colorado Division of Employment and Training, Camp and others stated that the plaintiff had violated department rules, that he was unqualified for his job and that he was ineligible for unemployment benefits for reasons other than his discharge.

Plaintiff commenced this action on January 5, 1990. As relief, he seeks reinstate-

ment to his former position, retroactive pay and compensatory damages.

## II. Analysis.

Plaintiff's liberty interest claim is based on allegations that Camp's letter and the statements at his unemployment compensation hearing damaged his reputation and foreclosed future employment opportunities. Defendants argue that this claim must fail because the statements were neither published nor stigmatizing.

Summary judgment is proper if the pleadings, depositions and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party opposing a properly supported summary judgment motion may not rest upon the mere allegations of the complaint, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

▆ To succeed on a liberty interest claim, an employee must show that dismissal resulted from *publication* of information that was both *false* and *stigmatizing.* *Wulf v. Wichita,* 883 F.2d 842, 869 (10th Cir.1989) (*quoting Asbill v. Housing Authority of Choctaw Nation,* 726 F.2d 1499, 1503 (10th Cir.1984)) (emphasis in original).

▆ "Publication," in the context of a liberty interest claim, is accorded its ordinary meaning "to be made public." *Bishop v. Wood,* 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976). Intragovernment dissemination of information related to a public employee's discharge, by itself, falls short of that definition. *Asbill,* 726 F.2d at 1503. Courts in the Tenth Circuit follow the United States Supreme Court's admonition in *Bishop,* 426 U.S. at 348, 96 S.Ct. at 2079, that a communication not made public cannot form the basis of a liberty interest claim. In this circuit, therefore, a plaintiff must show that the alleged stigmatizing information has been published. *Allen v. Denver Public School Board,*

928 F.2d 978 (10th Cir.1991); *Wulf,* 883 F.2d at 869; *Rich v. Secretary of Army,* 735 F.2d 1220, 1227 (10th Cir.1984); *Jacobs v. Dujmovic et al.,* 752 F.Supp. 1516 (D.Colo.1990); *Arvia v. Black,* 722 F.Supp. 644, 647 (D.Colo.1989).

▆ Moreover, the nature of the information published must have "the general effect of *curtailing [the plaintiff's] future freedom of choice or action." Asbill,* 726 F.2d at 1503 (emphasis in original). Mere reputational injury or allegations of speculative future harm to prospective employment relationships alone are insufficient to establish such a claim. *Id.; Wulf,* 883 F.2d at 870; *Phelps v. Wichita Eagle–Beacon,* 886 F.2d 1262, 1268–69 (10th Cir.1989); *Setliff v. Memorial Hosp. of Sheridan County,* 850 F.2d 1384, 1397 n. 18 (10th Cir. 1988).

Rather the stigmatization complained of must be entangled with some further interest, such as one's ability to obtain future employment. *Paul v. Davis,* 424 U.S. 693, 701, 709–710, 96 S.Ct. 1155, 1160, 1164–65, 47 L.Ed.2d 405 (1976); *Allen,* 928 F.2d at 981; *Melton v. City of Oklahoma City,* 928 F.2d 920, 926–27 (10th Cir.1991); *McGhee v. Draper,* 639 F.2d 639, 643 (10th Cir.1981). Absent that further "occupational" interest, a stigmatization claim does not rise to a constitutional level and is best pursued under state tort law. *Davis,* 424 U.S. at 710–712, 96 S.Ct. at 1165–66; *Allen,* 928 F.2d at 981; *Colaizzi v. Walker,* 812 F.2d 304, 307 (7th Cir.1987); *McGhee,* 639 F.2d at 643.

▆ The instant plaintiff's second claim fails to meet a liberty interest claim's publication requirement. While Camp's letter may have contained incorrect statements, the plaintiff has not alleged or shown that the letter was disseminated outside the department. Likewise, there is no allegation that the statements made at the plaintiff's unemployment compensation hearing have been published beyond the privileged arena of that hearing.

Moreover, the plaintiff has failed to establish that the alleged stigmatization was entangled in some occupational interest, a

fact that could reveal the claim's constitutional dimension. *See Allen*, 928 F.2d at 981. Rather he merely alleges that his *future* employment opportunities *may* be harmed. Under controlling case law, such speculative allegations are inadequate to state a liberty interest claim. *See, e.g., Asbill*, 726 F.2d at 1503.

Relying on *Brandt v. Board of Co–Op. Educational Services*, 820 F.2d 41 (2d Cir. 1987), however, the plaintiff argues that the publication requirement is satisfied when allegedly stigmatizing information is placed, as here, in a discharged employee's personnel file. In *Brandt*, the plaintiff was a teacher who had been discharged for alleged sexual misconduct with his students. He asserted that a report of those allegations, placed in his personnel file, would be made available to prospective employers.

■ Finding that public dissemination of that clearly stigmatizing information certainly would foreclose the plaintiff's future employment opportunities, the Second Circuit held in *Brandt* that the plaintiff was entitled to a name clearing hearing. *Id.* at 46. That court determined, however, that relief under § 1983 would be available only if the plaintiff could prove that disclosure is inevitable. *Id. Brandt* thus stands for the proposition that actual publication is unnecessary to obtain a name clearing hearing when the harmful effect imminent dissemination of clearly stigmatizing information will have on a plaintiff can be assessed in advance of publication.

The Tenth Circuit has reached a similar conclusion. In *Koerpel v. Heckler*, 797 F.2d 858 (10th Cir.1986), the plaintiff was a physician whose eligibility for Medicare reimbursement was to be revoked because he allegedly had furnished substandard medical care. Federal law required that the reasons for the eligibility revocation be published. Eighty-five percent of the plaintiff's medical practice derived from treating Medicare patients. Plaintiff, asserting a liberty interest claim, sought to enjoin publication of the reasons for the revocation.

The question before the *Koerpel* court was whether federal question subject matter jurisdiction existed. The court noted that "cases in this circuit unfailingly require publication" and that the publication requirement had not been satisfied. *Id.* at 865. The court determined, however, that because the nature of the information to be disclosed was known and the effects of disclosure could be measured accurately, the "allegations of deprivations of liberty [were] sufficiently colorable to obtain the jurisdiction of the federal court." *Id.* at 866.

■ I conclude that the narrow exception to the publication requirement recognized by the *Brandt* and *Koerpel* courts is inapplicable here. As the cited case law clarifies, the exception is applicable only in circumstances where, to avoid the consequences of imminent dissemination of allegedly stigmatizing information, a plaintiff seeks a name clearing hearing and an order prohibiting the dissemination. That relief is not sought by the instant plaintiff. Rather he prays only for reinstatement to his former job, retroactive benefits and compensatory damages. (*See* Complaint, p. 10–11).

■ Further, there is an absence of evidence that, under controlling case law, the plaintiff's claim rises to a constitutional level. Plaintiff has not alleged, and the facts do not support the inference, that publication of the information in his personnel file is imminent. Nor are the harmful effects to the plaintiff of potential future dissemination of the information amenable to accurate measure. Under established precedent, the plaintiff has the burden to establish that the objectionable information would have the effect of "foreclos[ing em-ployment] ... opportunities amounting to a deprivation of liberty." *Board of Regents v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972).

Here, however, the department's hearing officer, after reviewing the allegations against the plaintiff, found that his actions did not warrant dismissal. The grounds for that conclusion were detailed in a lengthy, written memorandum that pre-

sumably is in the plaintiff's personnel file. (*See* Defendant's brief, Ex. 2). Because the plaintiff, in pursuing future employment, could use that memorandum to explain the circumstances of his dismissal, any attempt to gauge in advance the effect the statements' dissemination might have on him would necessarily entail speculation and conjecture.

■ As noted, the plaintiff primarily takes issue with Camp's assertions that he twice had been fired for using excessive force and that he admitted wrongdoing. Despite the possibility that the plaintiff's reputation may be damaged by those statements, reputational damage alone is insufficient to state a liberty interest claim. *Asbill*, 726 F.2d at 1503.

Moreover, Camp has admitted in documents submitted to this court—now public records—that some of his statements were erroneous. Thus the extent to which those statements may damage the plaintiff in the future is entirely unclear. In these circumstances, it is clear that the plaintiff's claim is not cognizable under federal law. *Allen*, 928 F.2d at 981.

While the plaintiff may object that his discharge was unwarranted, Colorado law is clear that a sheriff may revoke the appointment of a deputy sheriff at his or her pleasure. Colo.Rev.Stat. § 30–10–506; *Jackson v. Johns*, 714 F.Supp. 1126 (D.Colo.1989); *Seeley v. Board of County Commissioners*, 771 P.2d 21 (Colo.App. 1989). For the above reasons, I conclude that the plaintiff has failed to establish a liberty interest claim.

Accordingly, IT IS ORDERED that the defendants' motion for summary judgment is granted, and the plaintiff's claims and action are dismissed.