42 F.3d 582
 Kim SIX, Rose Marie Bouska, Carolyn L. Mobley, Shannon J.
Martin, Kathy R. Givens, Vanda S. Wall, Carol
Leann Demos, and Brenda G. Curry,
Plaintiffs-Appellants,
v.
Claudette HENRY, individually and in her official capacity
as Treasurer of the State of Oklahoma, Defendant-Appellee.
 No. 93-6002.
 United States Court of Appeals,
Tenth Circuit.
 Nov. 30, 1994.
 
 Charles J. Watts, Looney Nichols Johnson & Hayes, Oklahoma City, OK (Rosemary M. Rogers and Gloyd L. McCoy, with him, on the briefs), for plaintiffs-appellants.
 Guy Hurst, Asst. Atty. Gen., Oklahoma City, OK (Susan B. Loving, Atty. Gen., with him, on the brief), for defendant-appellee.
 Before MOORE and LOGAN, Circuit Judges, and OWEN,* District Judge.
 OWEN, Senior District Judge.
 On January 14, 1991, plaintiffs Kim Six, Rose Marie Bouska, Carolyn L. Mobley, Shannon Martin, Kathy Givens, Vanda S. Wall, Carol Leann Demos, and Brenda G. Curry were nonpolicymaking, lower-level employees in the Office of the Oklahoma State Treasurer having been there between two and twelve years. When defendant Claudette Henry assumed office that day as Treasurer of the State of Oklahoma having defeated incumbent Ellis Edwards, she dismissed twenty employees of the staff of sixty she inherited, including the eight plaintiffs in this action.
 Plaintiffs alleged that their employment was terminated because they had actively campaigned for defeated incumbent Edwards against Henry and therefore were fired for political patronage reasons in violation of their First Amendment rights of free speech and association. Plaintiffs also alleged that during the campaign, Henry had stigmatized them publicly in campaign utterances which were reported in the press which injured their ability to obtain other employment, and in particular, she wrongfully prevented them from obtaining employment in other branches of the Oklahoma State government, all in violation of their liberty interests to pursue future employment as guaranteed by the First and Fourteenth Amendments.
 However, at the conclusion of the plaintiffs' case-in-chief in their action for damages in the District Court for the Western District of Oklahoma, the Court granted defendant Henry's motion to dismiss pursuant to Fed.R.Civ.P. 50 and entered judgment for defendant. Plaintiffs appeal.
 The standard of review of a court's order sustaining a motion for a directed verdict under Fed.R.Civ.P. 50 is de novo, applying the same rule applied by the district court. Rajala v. Allied Corp., 919 F.2d 610, 615 (10th Cir.1990), cert. den., 500 U.S. 905, 111 S.Ct. 1685, 114 L.Ed.2d 80 (1991). The question then is whether there was evidence upon which the jury could have based a verdict against defendant on the issues raised. Applying that standard, our review of the evidence in the light most favorable to the plaintiffs on both their claims confirms the appropriateness of the dismissal by the Court below as a matter of law at the close of the plaintiffs' case-in-chief.
 There is no question that the plaintiffs' employment was at-will. See Brown v. Reardon, 770 F.2d 896, 904 (10th Cir.1985); Burk v. K Mart Corp., 770 P.2d 24 (Okl.1989). The at-will rule, however, is subject to a number of exceptions including the exception that a state employee under an indefinite contract may not be discharged for political patronage reasons. In Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), the principle was stated at 375, 96 S.Ct. at 2690 (Stewart, J. concurring):
 
 
 1
 [A] nonpolicymaking, nonconfidential government employee can[not] be discharged or threatened with discharge from a job that he is satisfactorily performing upon the sole ground of his political beliefs.
 
 
 2
 Plaintiffs here acknowledge that what support there may be for their contention that they were terminated for political patronage reasons is at best wholly circumstantial. Henry interviewed many of the staff of the office,[1] including those she discharged, before announcing the discharges. However, neither to the press, nor to the plaintiffs, nor in her deposition, did she give any reason for terminating the eight plaintiffs. In the press she was quoted variously as saying: "She had a right to."; "That she eliminated a lot of fluff, .."; "Theoretically, I could replace everybody in the office."[2] In her deposition, as to specific individual plaintiffs, her responses were, "I just didn't want to hire her," "I just didn't think I wanted to bring her on with my organization," or "[I] just chose not to hire her. I cannot give you any specific reasons right at the moment." The eight plaintiffs, all of whom had campaigned for the defeated incumbent, speculated in general terms roughly as did plaintiff Kim Six,[3] who stated:
 
 
 3
 Because I campaigned hard for Ellis Edwards. She knew I did, and I feel like that would be the only reason that she would get rid of me. I feel like I am a good worker and I worked very hard. I don't see any other reason that I would have been fired other than political.
 
 Plaintiff Vanda Wall testified:
 
 4
 "There was no reason to fire me but political reasons."
 
 Plaintiff Kathy Givens testified:
 
 5
 Q. Do you know of any reason other than--other than your politics why Mrs. Henry would have gotten rid of you?
 
 
 6
 A. No, sir, I don't.
 
 
 7
 Accordingly, while the plaintiffs may subjectively--even understandably--have felt that their discharges were for political reasons, one of the very plaintiffs, Carol Leann Demos, undercut this position by testifying on cross-examination that at least eight of the staff that Henry retained had, to her knowledge, in fact also campaigned for her predecessor Ellis Edwards.[4]
 
 
 8
 The plaintiffs nevertheless assert that such authorities as Christian v. Belcher, 888 F.2d 410 (6th Cir.1989), Laidley v. McClain, 914 F.2d 1386 (10th Cir.1990) and Durant v. Independent School District # 16, 990 F.2d 560 (10th Cir.1993) are so factually similar as to require reversal of the order withdrawing this issue from the jury. We conclude, however, that plaintiffs' reliance on these authorities is misplaced. While each of these cases involved a discharge, in each there was some evidence, either direct or circumstantial, which, if credited by the jury, could support a finding of political patronage motivation. In Christian, the official that discharged Christian from his position as an inspector, admitted that her reasons for not renominating him were " 'personal and political' ". 888 F.2d at 412. In Laidley, the District Attorney who discharged Laidley, an investigator in his office, gave at least two reasons for the firing which the Court perhaps charitably characterized as "not entirely accurate." 914 F.2d at 1393. In Durant, the official discharging Mrs. Durant, who had actively campaigned for his rival, had been "specifically admonished ... to stay out of politics and threatened ... with termination if she persisted." 990 F.2d at 562. In this case there is no such evidence. Indeed, leaning the other way, is evidence referred to earlier that of those who campaigned against Henry, at least as many were retained as were discharged.[5] As the Court below noted in granting Henry's motion to dismiss:
 
 
 9
 "When a new employer comes in, some workers are often replaced, even though such workers may be competent, excellent workers. If the Court allowed this inference, that good workers cannot be fired as a triable issue, then all firings or rehirings would become merit review, employee evaluations, and firings for cause only...."
 
 
 10
 Thus, against this background, had the Court below submitted to the jury the issue of the plaintiffs' discharge, the jury would have had to engage in sheer speculation and conjecture, and if this were the rule, the absolute right of a newly-elected official acting with proper although unstated motivation to dismiss an at-will employee would be compromised. Accordingly, we conclude the Court below properly dismissed this claim at the close of the plaintiffs' case-in-chief.
 
 
 11
 Next, the District Court also dismissed plaintiffs' cause of action for violating their liberty interest to pursue future employment. Plaintiffs here too contend that there was sufficient evidence upon which the jury could have based a verdict against defendant Henry.
 
 
 12
 The applicable law is contained in Asbill v. Housing Authority of Choctaw Nation, 726 F.2d 1499 (10th Cir.1984). There we held that for a successful liberty deprivation claim, an employee
 
 
 13
 ... must show that her dismissal resulted in the publication of information which was false and stigmatizing--information which had the general effect of curtailing her future freedom of choice or action. (Underscoring in original. Footnotes omitted) Id. at 1503.
 
 
 14
 Here plaintiffs' proof at best showed that the plaintiffs, who were eight out of twenty that were dismissed, were never named or individualized in any specific statements that were either quoted in the public press, such as that Henry
 
 
 15
 "eliminated a lot of fluff ...," and that "she considers her election a mandate to clean house after Treasurer Ellis Edwards leaves office,"
 
 
 16
 or, as in the general recollection of a coworker of the plaintiffs, had been uttered in the campaign:
 
 
 17
 ... Ms. Henry when she--when her campaign--I remember one of the deals said she didn't want the people of Oklahoma to be shamed by the Treasury.
 
 
 18
 She was going to eliminate all the fluff, get rid of all the crooks and bums in the Treasurer's office....
 
 
 19
 * * * * * *
 
 
 20
 Q. Those were statements made after the election, weren't they?
 
 
 21
 A. Could have been, there were some made probably during the election too.
 
 As we stated in Asbill, 726 F.2d at 1503:
 
 22
 The Supreme Court as indicated that for statements to be stigmatizing they must rise to such a serious level as to place the employee's good name, reputation, honor, or integrity at stake. (Citation omitted.)
 
 
 23
 Under this test, on this record, there was no stigmatization as the law defines it of any plaintiff in any public pronouncement attributed to Henry in specific news articles or in any campaign utterance as a co-worker recalled them.
 
 
 24
 Further, the unwillingness of the Office of State Finance to hire Rose Marie Bouska after Henry let her go, which plaintiffs contend was evidence of Henry's behind-the-scenes intervention, turns out upon examination of the record to be merely a situation in which it was at first thought Bouska could be of some assistance with regard to a certain "reconciliation effort" Bouska had theretofore done monthly with the Finance Office. Bouska indicated a willingness to do it but after consideration, according to the testimony of a Finance Office employee, Bouska's employment for that purpose
 
 
 25
 "... was dropped as an option, as an alternative to speed along the reconciliation.
 
 
 26
 * * * * * *
 
 
 27
 ... it just wasn't a reasonable alternative."
 
 
 28
 Further, predecessor Edwards, when asked about this subject generally, testified:
 
 
 29
 Q. And when they were not hired at the Office of State Finance, without going into hearsay, without telling us what somebody else told you do you know why they were not hired?
 
 
 30
 A. I don't know.
 
 
 31
 Indeed, as we also held in Asbill, even if on this record Henry had made a negative statement to other Oklahoma government office personnel as to any plaintiff, such "intra-government dissemination, by itself, falls short of the Supreme Court's notion of publication ..." Asbill, 726 F.2d at 1503. Given the foregoing, we therefore conclude that the Court below properly dismissed this claim as well at the close of plaintiffs' case-in-chief.
 
 
 32
 Finally, plaintiffs assert that the Court below erroneously denied their motion during the trial to enforce a subpoena they contend they served upon Henry which called for her appearance on the trial. The Court took the testimony of the two process servers on this issue. One testified that he had "Claudette Henry" on the telephone in her hotel room in Oklahoma City while simultaneously the other process server, connected by a beeper, announced he was serving process and shoved the subpoena under the door of the room. The Court, without hearing Ms. Henry, stated:
 
 
 33
 As far as making a determination that the personal service was made on Mrs. Henry, the Court feels like there are a couple of obstacles that the Court is having trouble concluding that service was made on Mrs. Henry because number one, there is no one of the two--of the testimony that was given, no one ever saw Mrs. Henry.
 
 
 34
 * * * * * *
 
 
 35
 There is no testimony that those two [process servers] were in close proximity together where there is actual knowledge that the door--where the service--where the subpoena was slid under the same room that the person was talking to.
 
 
 36
 * * * * * *
 
 
 37
 The Court just finds that it is a little bit too great of a leap with people outside of sight of each other with no evidence by the person who actually served the subpoena ever hearing anything or anyone in the room, and the Court just finds it is too big of a leap to find that proper service was had in this case.
 
 
 38
 The District Judge had heard the witnesses. He stated he regarded the question as a close and troublesome one, but he was not required to and did not accept the process servers' testimonial conclusion, even though uncontradicted. In this he was well within his discretion. See United States v. Kingston, 971 F.2d 481, 486 (10th Cir.1992). In any event, since the plaintiffs had taken Henry's deposition and had extensively read from it at the trial as part of their case, we find no "manifest injustice" to the plaintiffs under the circumstances. A reversal is therefore not warranted on this ground, even were the District Court's ruling erroneous. See, e.g., U.S. v. Porter, 881 F.2d 878, 884 (10th Cir.1989) cert. denied, 493 U.S. 944, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989); Faulkner v. Super Valu Stores, Inc., 3 F.3d 1419, 1435 (10th Cir.1993).
 
 
 39
 Accordingly, the judgment of the District Court dismissing the action is affirmed.
 
 
 
 *
 The Honorable Richard Owen, Senior District Judge of the United States District Court for the Southern District of New York, sitting by designation
 
 
 [1]
 Whether Henry's interviews were as short as plaintiffs claim is immaterial
 
 
 [2]
 Predecessor Edwards agreed that Henry had this right, testifying that such employees "served at the pleasure of the treasurer."
 
 
 [3]
 When interviewing Kim Six, Henry wrote in her notes: "Thinks Ellis: Royce 2 finest individuals." Ms. Six contends this is a clear indication that Henry fired her because she was a supporter of Ellis. We cannot agree that that conclusion necessarily follows
 
 
 [4]
 Edwards gave some confirmation to this on the trial
 
 
 [5]
 Whereas Edwards on the trial testified that he had increased the size of the office, Henry shrank it, the record indicating she stated to the press:
 She said some of the people being fired are management level employees who will not be immediately replaced, or their duties will be filled by other employees who have been under utilized.
 We note that the record is silent as to replacements, if any, for plaintiffs.