Terry BELL, Plaintiff,

v.

**BOARD OF COUNTY COMMIS-
SIONERS OF JEFFERSON
COUNTY, Defendant.**

**No. CIV.A.03–2148–KHV.**

United States District Court,
D. Kansas.

Oct. 26, 2004.

Alan V. Johnson, Stephen D. Lanterman, Sloan, Listrom, Eisenbarth, Sloan & Glassman, LLC, Topeka, KS, for Plaintiff.

Michael T. Jilka, Holbrook & Osborn, PA, Wendell F. Cowan, Jr., Shook, Hardy & Bacon L.L.P., Overland Park, KS, for Defendant.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

Terry Bell brought suit under 42 U.S.C. § 1983 against the Board of Commissioners of Jefferson County, Kansas. Plaintiff claimed that the County violated his constitutional rights when it terminated his employment in retaliation for his exercise of free speech rights under the First Amendment. Plaintiff also claimed that without procedural due process defendant deprived him of a property interest in continued employment and a liberty interest in his good name and reputation in violation of the Fourteenth Amendment. On April 19 through 23 and April 26, 2004, plaintiff tried his claims to a jury. The jury found that defendant had violated plaintiff's liberty interest in his good name and reputation, and awarded him $50,000 in compensatory damages and $40,000 for lost wages and benefits.

This matter comes before the Court on defendant's *Motion To Alter Or Amend Judgment, Or For Judgment, Or For Remittitur, Or For New Trial* (Doc. # 148) filed May 24, 2004. Also before the Court are plaintiff's *Motion For Order For Equitable Relief* (Doc. # 142) filed May 3, 2004, *Motion To Reconsider And Alter Judgment* (Doc. # 146) filed May 19, 2004, and *Motion For Attorney Fees And Expenses* (Doc. # 147) filed May 21, 2004. For reasons set forth below, the Court finds that defendant's motion should be sustained in part, and that the remaining motions are therefore moot.[1]

### Factual Background

■ In its *Memorandum And Order* (Doc. # 98) of March 29, 2004, the Court set forth pertinent factual background which is incorporated by reference. The following is a brief summary of the evidence presented at trial concerning plaintiff's liberty interest claim.[2]

On June 1, 1986, Jefferson County hired Terry Bell as an emergency medical tech-

---

1. Plaintiff's *Motion For Order For Equitable Relief* (Doc. # 142) filed May 3, 2004, asserts that based on the jury finding that defendant deprived him of a liberty interest related to his employment, he is entitled to reinstatement or front pay. Plaintiff's *Motion To Reconsider And Alter Judgment* (Doc. # 146) filed May 19, 2004, renews plaintiff's motion for equitable relief, again asking the Court to reinstate him or award front pay. Plaintiff's *Motion For Attorney Fees And Expenses* (Doc.

# 147) filed May 21, 2004, asserts that under 42 U.S.C. § 1988, plaintiff is entitled to attorney's fees of approximately $175,000.00 and expenses of approximately $11,000.00.

2. On a motion for judgment as a matter of law, the Court must view the evidence in the light most favorable to the prevailing party. *See Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.,* 82 F.3d 1533, 1546 (10th Cir.1996).

nician for its Emergency Medical Services ("EMS"). On November 14, 2001, Don Haynes, EMS director, promoted Bell to assistant director of EMS. Beginning in January of 2002, Bell expressed concerns to Haynes about the County EMS. Plaintiff's concerns were that (1) Haynes and another EMS employee had not followed protocol in responding to a "code blue" medical call; (2) Haynes had given County supplies (and proposed giving County funds) to the Valley Falls Fire Department; (3) an EMS employee committed Medicare fraud; and (4) Haynes had responded to calls in a County vehicle while under the influence of alcohol.

Six months later, on July 30, 2002, Haynes met with EMS employees Philip Briney, Tim Dooley, Steve Scott, John Shipley, Janey Gordon and Tani Ruff. They complained that Bell displayed an "abusive" attitude, created tension in the workplace, and called female employees bitches and cunts. All six employees gave Haynes written statements which outlined their concerns, addressing conduct that had occurred months and even years before the meeting. On August 2, 2002, Haynes prepared a letter to Bell, informing him that his employment was terminated. The letter stated:

> It has been brought to my attention that there has been more than one incident that you have verbally made several employees fearful of their jobs. On one occurrence you said "that if you said shit they had better start looking for a corner." It has just been reported to me that you now have made a physical threat to an employee. You told this employee "that if they ever did that again that you would kick their ass." This has made for a Hostile [sic] work environment. This cannot and will not be tolerated. Because of your actions towards other employee's [sic] I have no

other choice but to end your employment with Jefferson County.

Joint Trial Ex. A at D 00700. On August 2, 2002, Haynes and Oliver met with Bell and told him that his employment was terminated. Oliver read Haynes' letter of August 2 and gave it to Bell. After the meeting the County placed a copy of the termination letter in Bell's personnel file pursuant to the Handbook provision on "Personnel Records." That policy provided in relevant part as follows:

> Complete records of the employment history of every current and former County employee shall be maintained in an employee personnel file. The employee, designee of the employee, Department Head/Supervisor or their designee, and the County Commissioners shall have access to the personnel files. Access may be granted as legally required or otherwise advisable to courts, representatives of investigatory agencies or third-party payor, etc. The confidentiality of employee records shall be maintained to the extent permitted here.... The following documents are to be included in each employee's personnel file: ... resignation, termination notification with date, grievances with action taken and date, etc.

Defendant's Trial Ex. 403 at D 01014.

On August 7, 2002, pursuant to step one of the County grievance policy, Bell submitted to Haynes a written grievance contesting his termination. On August 22, 2002, Bell filed with the County Commission a "Notification of Request for Grievance Hearing" which contested his termination and refuted the allegations set forth in Haynes' letter of August 2. The Commission referred the requests to the grievance committee comprised of Bob Abel, Annie Landis and Chris Schmeissner. The County Commission gave no direction to the grievance committee as to how to

conduct the grievance hearing; it merely directed the grievance committee to consult with County Counselor, Steve Montgomery.

Abel consulted Montgomery as to how to go forward with the process. Because of the number of pending requests by Bell, Montgomery advised Abel to conduct a pre-grievance conference. At this conference, which occurred on September 6, Abel decided to limit the hearing to eight hours and told Bell that he would have four hours to present his case. Abel decided that if witnesses could not or would not come to the proceedings, the grievance committee would not force them to participate. Abel required each side to provide questions for witnesses and stated that the committee would ask the questions. The meeting was in the County courthouse and when Bell objected to these decisions, Abel told him that he could do them all a favor and just pay his fee and file his complaint upstairs.

Before the grievance hearing, Bell's attorney gave Abel a list of witnesses he wanted to call and questions for each witness. One witness on Bell's list was Janey Gordon, whose complaint that Bell had threatened to "kick her ass" had been cited in the termination letter of August 2. Abel, however, did not request Gordon's presence at the hearing.

On October 10, 2002, the grievance committee conducted a hearing. Abel instructed the witnesses that they did not have to answer any question which made them uncomfortable. Abel did not ask all questions which plaintiff submitted and he rephrased a number of plaintiff's questions. Abel did not allow Bell to call all of his witnesses, even though they were in the courthouse. Several EMS employees who had lodged complaints against plaintiff, including Gordon and Scott, were not called. Plaintiff therefore had no opportu-

nity to cross-examine them. Bell testified that during the grievance hearing, he discussed concerns which he had previously expressed to Haynes.

On October 14, 2002, the grievance committee submitted a one-sentence decision to the Jefferson County Commission. It stated:

> After hearing testimony and reviewing the evidence the grievance committee recommends that the Jefferson County Commission should uphold the decision to terminate Terry Bell.

Joint Trial Ex. B at D 01690.

Abel gave the recommendation to the County Commission during an executive session. Before the executive session, Abel had not discussed Bell's grievance with any of the Commissioners. During the executive session, Abel did not give the Commissioners any information other than what was in the grievance committee decision, and the Commissioners did not ask any questions. The executive session lasted ten minutes. Bell received a copy of the grievance committee decision after October 14, and the Commission did not give him the opportunity to appear or respond to the grievance committee decision.

At trial, plaintiff claimed that defendant discharged him in retaliation for his exercise of free speech rights under the First Amendment and that without procedural due process, defendant deprived him of a property interest in continued employment and a liberty interest in his good name and reputation, in violation of the Fourteenth Amendment. The jury returned a defense verdict on plaintiff's First Amendment and Fourteenth Amendment property interest claims. As to the liberty interest claim, the Court had submitted the following instruction to the jury:

> Plaintiff's third claim is that the County denied him his procedural due process

right to a hearing to protect his good name and reputation, in violation of the Fourteenth Amendment of the Constitution. To establish this claim under 42 U.S.C. § 1983, plaintiff must prove that each of the following elements is more probably true than not true:

1. Don Haynes' termination letter of August 2, 2002 made statements which impugned plaintiff's good name, reputation, honor or integrity;

2. Those statements were false;

3. Defendant published those false statements; and

4. At the hearing with regard to his termination, the grievance committee denied plaintiff a name-clearing hearing before an impartial tribunal or a meaningful opportunity to confront and cross-examine adverse witnesses.

With regard to the first element, the Court instructs you that Don Haynes' letter impugned plaintiff's good name and reputation when it stated that "you have now made a physical threat to an employee ... This has made for a hostile work environment."

Based on this instruction the jury returned a verdict for plaintiff.

In its motion to alter or amend the judgment, defendant asserts that it is entitled to judgment on plaintiff's liberty interest claim because (1) the Court erred in submitting this theory to the jury since the pretrial order did not include it[3]; (2) plaintiff did not present evidence that defendant published a false statement in the

course of his termination; and (3) plaintiff did not present evidence that defendant disseminated the false and stigmatizing information. Alternatively, defendant asserts that it is entitled to a remittitur of the verdict for $40,000 lost wages and benefits because plaintiff did not present evidence that any prospective employer knew about the false statement.

The Court finds that plaintiff did not present evidence sufficient to support a finding that defendant published a false statement in the course of plaintiff's termination. Defendant is therefore entitled to judgment as a matter of law on plaintiff's liberty interest claim. The remaining motions are therefore moot.

### Analysis

 The Tenth Circuit applies a four-part test to demonstrate the deprivation of a liberty interest in one's good name and reputation:

First, to be actionable, the statements must impugn the good name, reputation, honor, or integrity of the employee. Second, the statements must be false. Third, the statements must occur in the course of terminating the employee or must foreclose other employment opportunities. And fourth, the statements must be published.

*Workman v. Jordan,* 32 F.3d 475, 481 (10th Cir.1994) (citations omitted); *see also Melton v. City of Oklahoma City,* 928 F.2d 920, 926–27 (10th Cir.1991) (en banc) (elements not disjunctive; all must be satisfied); *see also Tonkovich v. Kansas Bd. of Regents,* 159 F.3d 504, 526 (10th Cir.1998)

---

**3.** Defendant correctly asserts that the Court very liberally construed the *Pretrial Order* to include the liberty interest as it is now framed. *See Pretrial Order* at 7 (setting forth factual basis of liberty claim as follows: "since his termination, Mr. Bell has been advised that defendants have told members of the community that Mr. Bell has been terminated for poor patient care, misappropriation of public funds, sexually harassing female employees, and because members of JCEMS stated that they would quit if not fired"). In retrospect, its construction appears to have been too liberal.

(if plaintiff establishes all elements, due process clause requires adequate name-clearing hearing). Because this issue is dispositive, the Court first addresses defendant's argument that plaintiff did not produce evidence that it published the stigmatizing statement.

■ To establish publication, plaintiff relied exclusively upon evidence that the County placed the termination letter in his personnel file. Pursuant to the County Handbook, County Commissioners and plaintiff's department head have routine access to plaintiff's personnel file. If legally required or "otherwise advisable" to do so, the County may also grant access to courts, investigatory agencies and third-party payors, "etc." In overruling defendant's motion under Rule 50, Fed.R.Civ.P. on the issue of publication, this Court relied upon dicta in *Bailey v. Kirk*, 777 F.2d 567 (10th Cir.1985), in which the Tenth Circuit stated as follows:

> Courts have held that the presence of false and defamatory information in an employee's personnel file may constitute "publication" if not restricted for internal use. *See ... Doe v. United States Civil Service Commission*, 483 F.Supp. 539, 570–71 (S.D.N.Y.1980) (derogatory statements in plaintiff's files were sufficient to demonstrate publication because they were "memorialized in an official ... report that could be relied upon by the [employer] or another federal agency in the event that [plaintiff] reapplie[d] for a fellowship or [sought] another high level government position.")

*Id.* at 580 n. 18. Based on *Bailey*, this Court predicted that the Tenth Circuit would hold that by placing Haynes' letter in plaintiff's personnel file, the County published it. *See Memorandum And Order* (Doc. # 143) filed May 10, 2004, at 12–13. With the benefit of extensive legal argument by the parties, the Court now revisits this prediction.

"To impinge on a liberty interest, the stigmatizing information must be made public by the offending government entity." *Rich v. Secretary of the Army* 735 F.2d 1220, 1227 (10th Cir.1984); *see also Wulf v. Wichita*, 883 F.2d 842, 869 (10th Cir.1989) (plaintiff must show that alleged stigmatizing information has been published; allegations of speculative future harm to prospective employment relationship insufficient). As noted, plaintiff's only evidence of publication was that defendant placed the termination letter in his personnel file. At least four circuits have held that merely placing a letter in a personnel file does not constitute publication because it does not establish dissemination. *See, e.g., Dasey v. Anderson*, 304 F.3d 148, 156 (1st Cir.2002) (without dissemination, no right to name-clearing hearing); *Hughes v. City of Garland*, 204 F.3d 223, 228 (5th Cir.2000) (presence of stigmatizing information in personnel file insufficient to create triable issue on public disclosure element of liberty interest claim); *McMath v. City of Gary, Ind.*, 976 F.2d 1026 (7th Cir.1992) (information in plaintiff's personnel file may be "ticking time bomb" but unless it is disseminated, no publication); *Copeland v. Phila. Police Dep't*, 840 F.2d 1139, 1148 (3d Cir.1988) (presence of information relating to termination in personnel file does not raise inference that defendant intends to communicate information to prospective employers).

Other circuits have held that placement of false and stigmatizing information in an employee personnel file may constitute publication if the file is either available to the public or likely to be disclosed to prospective employers. *See, e.g., Cox v. Roskelley*, 359 F.3d 1105, 1112 (9th Cir.2004) (placement of stigmatizing information in personnel file, in face of state statute man-

dating release to public upon request, constituted publication sufficient to trigger liberty interest); *Donato v. Plainview–Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 631–32 (2d Cir.1996) (personnel file likely to be disclosed to prospective employers); *Buxton v. City of Plant City, Fla.*, 871 F.2d 1037, 1042–46 (11th Cir.1989) (presence of stigmatizing information in public record by state entity, pursuant to state statute or otherwise, constitutes sufficient publication to implicate liberty interest under Florida law); *Hogue v. Clinton*, 791 F.2d 1318, 1322–23 n. 7 (8th Cir.1986) (personnel file may constitute publication if defendant made file available to prospective employers); *Ledford v. Delancey*, 612 F.2d 883, 886–87 (4th Cir.1980).

In *Harris v. Blake*, 798 F.2d 419, 419 n. 2 (10th Cir.1986), the Tenth Circuit appears to require dissemination in lieu of a more lenient "likely to be disseminated" or "available to the public" standard. In *Harris*, a graduate school placed in plaintiff's file a letter concerning his forced withdrawal. Plaintiff claimed that the school deprived him of liberty interests in his good name and reputation and ability to pursue a psychology career. The Tenth Circuit noted that if the graduate school had publically disseminated the reasons for the forced withdrawal, and if those reasons could have stigmatized plaintiff's future or foreclosed future career opportunities, plaintiff would have been entitled to a name-clearing hearing. The Tenth Circuit noted, however, that plaintiff had no evidence that defendants disseminated the letter outside of the school. *Harris*, 798 F.2d at 419 n. 2; *cf. McGhee v. Draper*, 564 F.2d 902, 910 n. 6 (10th Cir.1977) (considering possibility of future disclosure where school superintendent conceded that district might disclose to potential employers false information which could damage plaintiff's employment opportunities).

Defendant argues that it is entitled to judgment under either standard: if the Tenth Circuit requires actual dissemination, plaintiff did not produce evidence that it disseminated the letter; if the Tenth Circuit adopts a standard based on likely dissemination or public availability, plaintiff cannot prevail because Kansas law does not classify his personnel file as a public record and the County deems it to be confidential.

The Court agrees that plaintiff cannot satisfy any standard which requires proof of actual dissemination. As noted above, however, County policy authorizes the employee's department head and the County Commissioners to routinely access personnel files. Also, if legally required "or otherwise advisable" to do so, the County may grant access to courts, investigatory agencies, third-party payors, "etc." If the Tenth Circuit requires only likely disclosure, the narrow question is whether the right of internal access or the future possibility of disclosure constitutes publication. Defendant asserts that the Tenth Circuit has ruled that intra-governmental dissemination does not constitute publication. *See Asbill v. Hous. Auth. of Choctaw Nation*, 726 F.2d 1499, 1503 (10th Cir.1984). In *Asbill*, the Tenth Circuit found that plaintiff had not shown publication of false and stigmatizing information, stating as follows:

> [I]t does not appear from the record that [the statements] were published outside the state government; such intra-government dissemination, by itself, falls short of the Supreme Court's notion of publication: "to be made public."

726 F.2d at 1503. Defendant acknowledges that the Tenth Circuit has also suggested that intra-governmental dissemination *may* constitute publication. In *Bailey v. Kirk*, 777 F.2d at 567, a police officer alleged that the police chief had wrongly

accused him of misappropriating police property. The district court dismissed the complaint. The Tenth Circuit reversed, finding that plaintiff had alleged sufficient facts to set out a liberty interest based on constructive discharge. In doing so, it observed that "[c]ourts have held that the presence of false and defamatory information in an employee's personnel file may constitute 'publication' *if not restricted for internal use.*" 777 F.2d at 580 n. 18 (emphasis added). As support for this proposition, *Bailey* cites *Doe v. United States Civil Service Commission*, 483 F.Supp. 539, 570–71 (S.D.N.Y.1980), with a parenthetical that the employer or another federal agency might rely upon derogatory statements in plaintiff's files.

As noted, in ruling on defendant's Rule 50 motion on the issue of publication, this Court relied upon the following language in *Bailey:*

> Courts have held that the presence of false and defamatory information in an employee's personnel file may constitute "publication" if not restricted for internal use. *See* ... *Doe v. United States Civil Service Commission*, 483 F.Supp. 539, 570–71 (S.D.N.Y.1980) (derogatory statements in plaintiff's files were sufficient to demonstrate publication because they were "memorialized in an official ... report that could be relied upon by the [employer] or another federal agency in the event that [plaintiff] reapplie[d] for a fellowship or [sought] another high level government position.")

777 F.2d at 580 n. 18. Defendant correctly points out that intra-governmental dissemination generally falls short of the Supreme Court's notion of publication.[4] *See McCarty v. City of Bartlesville*, 8 Fed. Appx. 867, 874, 2001 WL 246196, *5 (10th Cir.2001) (discussion of case with district attorney was intra-governmental dissemination and not publication); *Custodio v. Parker*, 65 F.3d 178, 1995 WL 523123, *4 (10th Cir.1995) (false statement to plaintiff's superiors was intra-government dissemination and not publication).

As to the possibility of future disclosure outside the county, the record contains no information about the circumstances under which the County might provide access to courts, investigatory agencies, third party payors, "etc." Accordingly, the Court cannot determine whether the so-called "ticking time bomb" problem is real or only hypothetical in this case.[5] To avoid the consequences of imminent dissemination of allegedly stigmatizing information, the Tenth Circuit has found federal jurisdiction where a plaintiff seeks a name-clearing hearing and an order prohibiting dissemination pending the outcome of the hearing. *See Koerpel v. Heckler*, 797 F.2d 858, 865–66 (10th Cir.1986) (where federal law required publication of reasons for revocation of eligibility to receive medicare reimbursement, court had jurisdiction over doctor's liberty interest suit). In this case, if plaintiff had alleged and produced evidence of imminent publication, he might be entitled to injunctive relief, including a name-clearing hearing and an order prohibiting the dissemination, under *Koerpel.* Here, however, plaintiff has not alleged or produced evidence that publication is likely or imminent. Further, he has not requested the type of injunctive relief outlined in

4. The Supreme Court has defined publication as: "to be made public." *Bishop v. Wood*, 426 U.S. 341, 348, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976) (employer did not publically disclose reasons for discharging plaintiff where it orally communicated reasons to plaintiff in private).

5. In its post-trial papers defendant represents that the County removed the letter from the file in September, 2003, and asserts that injunctive relief therefore would not be appropriate.

*Koerpel*—a name-clearing hearing and a temporary injunction prohibiting dissemination until he receives that hearing. Rather, plaintiff seeks reinstatement to his former job (or front pay).[6] *See Harrison v. Bd. of County Comm'rs*, 775 F.Supp. 365, 368 (D.Colo.1991).

For these reasons, the Court finds that defendant is entitled to judgment as a matter of law on plaintiff's liberty interest claim.

**IT IS THEREFORE ORDERED** that defendant's *Motion To Alter Or Amend Judgment, Or For Judgment, Or For Remittitur, Or For New Trial* (Doc. # 148) filed May 24, 2004 be and hereby is **SUSTAINED IN PART**, in that defendant's renewed motion for judgment as a matter of law on plaintiff's liberty interest claim is **SUSTAINED** and defendant is therefore entitled to judgment as a matter law. Defendant's motion is otherwise **OVERRULED as UNNECESSARY TO DECIDE**.

**IT IS FURTHER ORDERED that the Judgment (Doc. # 144) filed May 10, 2004, be and hereby is VACATED. The clerk is directed to enter judgment for defendant.**

**IT IS FURTHER ORDERED** that plaintiff's *Motion For Order For Equitable Relief* (Doc. # 142) filed May 3, 2004; plaintiff's *Motion To Reconsider And Alter Judgment* (Doc. # 146) filed May 19, 2004; and plaintiff's *Motion For Attorney Fees And Expenses* (Doc. # 147) filed May 21, 2004 be and hereby are **OVERRULED AS MOOT**.

---

**6.** As noted above, the jury rejected plaintiff's claim that defendant deprived him of a property interest in continued employment without due process of law. Plaintiff's request for reinstatement and front pay is ill-tailored to the claim on which he prevailed—that without procedural due process, defendant deprived him of a liberty interest in his good name and reputation.