Mohammed BABI, Plaintiff–Appellant,

v.

COLORADO HIGH SCHOOL ACTIVITIES ASSOCIATION; Bob Ottewill, in his capacity as Commissioner of the Colorado High School Activities Association; Colorado High School Activities Association Executive Committee; Bennett School District No. 29–J; Board of Education, Bennett School District No. 29–J; James Lathrop, in his former capacity as Superintendent of Bennett School District No. 29–J; Gail Hageman, in her former capacity as principal of Bennett High School; and Ron Howard, in his former capacity as athletic director at Bennett High School, Defendants–Appellees.

No. 02CA1189.

Colorado Court of Appeals,
Div. II.

Aug. 14, 2003.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2002.

Craig D. Johnson & Associates, P.C., Craig D. Johnson, Susan M. Spaulding, Broomfield, Colorado, for Plaintiff–Appellant.

Halpern Clancy LLC, Alexander Halpern, John P. Clancy, Boulder, Colorado, for Defendants–Appellees.

Opinion by Judge MARQUEZ.

Plaintiff, Mohammed Babi, appeals the summary judgment entered in favor of defendants, the Colorado High School Activities Association (CHSAA); Bob Ottewill, commissioner of CHSAA; the CHSAA Executive Committee; Bennett School District No. 29–J; James Lathrop, former superintendent; Gail Hageman, former school principal; and Ron Howard, former school athletic director. We affirm in part, reverse in part, and remand for further proceedings.

CHSAA is a voluntary association of public and private high schools formed for the convenient governance of interscholastic athletics and activities. The District was a member of CHSAA, and plaintiff was registered as a coach through CHSAA. CHSAA's by-laws provide that "Each coach shall be responsible for the contents of the CHSAA Constitution and by-laws and the pre-season and playoff bulletins. Coaches whose programs are in violation of CHSAA policies or by-laws shall be subject to appropriate penalties from reprimand to restriction."

In November 1999, plaintiff was employed by the District to act as head wrestling coach for the 1999–2000 school year. In this capacity, he was injured on January 5, 2000, and unable to attend a series of wrestling practices and events. After plaintiff was injured, the assistant coach took over the coaching duties.

On January 15, 2000, a Bennett wrestler participated in a tournament without complying with certain CHSAA rules. The athletic director was aware of plaintiff's injury and drafted a contract designating the assistant as the head coach, but this contract had not been executed as of the time of the tournament. Plaintiff was present at that tournament, but contends that he was there only as a CHSAA-qualified chaperone and did not act as coach.

Upon discovering the infractions, the athletic director reported them to CHSAA on January 18, 2000, and informed it that plaintiff had been suspended. The athletic director met with plaintiff the same day. However, the nature of that meeting and whether it occurred before or after the information was sent to CHSAA are disputed.

The following day, plaintiff met with the athletic director and the school principal. While the nature of that meeting is also disputed, plaintiff was given a letter in a sealed envelope, which he opened and read after the meeting. The letter stated, "I am placing you on suspension without pay for the remainder of the 1999–2000 season." The wrestling season ended in February 2000.

On January 21, 2000, CHSAA placed the District's wrestling program and plaintiff on restriction from all state playoff activities.

On the same date, CHSAA notified the District that based on its corrective action of suspending plaintiff, the restriction on the wrestling program was temporarily lifted. The District was advised that if it wished to have the restriction on plaintiff removed, the District would have to submit a written request.

On January 24, 2000, the principal wrote to CHSAA advising that plaintiff had received misinformation on the wrestler in question and that the District had mixed information on the number of practices the wrestler had attended. Further, the District was not aware of the extent of the impairment that medication and pain were causing plaintiff. The letter inquired whether it was possible to rescind plaintiff's suspension and allow him to coach for the remainder of the season.

By letter of the same date, CHSAA responded stating that if the District were reconsidering plaintiff's suspension, CHSAA would be compelled to reconsider the lifting of the restriction on the wrestling program. It noted that it was still reacting to the reported violations committed while plaintiff was coaching, that there was not yet a consistent set of facts, and that unless there were a change in facts regarding the violations, CHSAA would continue its course of action. CHSAA, however, stated that it would consider a new proposed corrective action by the District. The record does not indicate whether the District responded to this letter. CHSAA removed the restriction on plaintiff in April 2000 and placed him on probation for one year.

In October 2000, CHSAA considered plaintiff's appeal. After reviewing evidence from the District and plaintiff, including evidence about plaintiff's physical condition and the alleged wrestling violations, CHSAA denied a motion to remove plaintiff from probation.

Plaintiff filed suit against defendants in November 2000, asserting, among other things, claims for breach of contract, taking of a vested property right, denial of due process, and abuse of discretion. The court granted summary judgment in favor of defendants as to these claims, except the claim for breach of contract. The court determined that the CHSAA rules were adopted to ensure that important public health and safety concerns were addressed and that there was no nexus between CHSAA's disciplinary action and plaintiff's contractual relationship with the District. The trial court also concluded, based on the meetings between plaintiff and District employees, that plaintiff was afforded due process of law before his "termination." It held that the abuse of discretion claim "is also nothing more than a due process claim" and concluded that this claim must also fail. Plaintiff subsequently dismissed his claim for breach of contract.

## I.

Summary judgment is appropriate when the pleadings and supporting documents demonstrate that no genuine issue as to any material fact exists and that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Martini v. Smith*, 42 P.3d 629 (Colo.2002). An appellate court reviews de novo a trial court's order granting summary judgment. *Vail/Arrowhead, Inc. v. Dist. Court*, 954 P.2d 608 (Colo.1998).

## II.

Plaintiff contends that when CHSAA sanctioned him without notice or an opportunity to be heard, the sanction adversely affected his right to work as a wrestling coach under contract with the District, and it amounted to a taking of a vested property right in violation of 42 U.S.C. § 1983(19—). We disagree.

### A.

The Fourteenth Amendment mandates that a state may not deprive any person of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1.

■ In bringing a due process claim under § 1983, a plaintiff must show that (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Hillside Cmty. Church v. Olson*, 58 P.3d 1021 (Colo.2002).

■ In evaluating a due process claim, a court must consider: (1) whether a property right has been identified; (2) whether governmental action with respect to that property right amounts to a deprivation; and (3) whether the deprivation, if any, was visited upon the plaintiff without due process of law. *Hillside Cmty. Church v. Olson, supra; Ewy v. Sturtevant,* 962 P.2d 991 (Colo.App.1998); *see Whiteside v. Smith,* 67 P.3d 1240 (Colo. 2003).

As a threshold matter, CHSAA assumes, for the purposes of summary judgment and this appeal only, that it is subject to suit under § 1983. We likewise assume, without deciding, that CHSAA's actions are state actions for the purposes of the Fourteenth Amendment. *See Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001).

Next, the trial court here did not address whether plaintiff had a protected interest in his employment. We conclude that while plaintiff had a property right in his employment with the District for the 1999–2000 year, he has not demonstrated that CHSAA deprived him of that right. Plaintiff does not contend that he had a vested property right with CHSAA.

■ To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. The person must have a legitimate claim of entitlement to it. *Bd. of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *see Ewy v. Sturtevant, supra.*

■ Sources of property interests include express or implied contracts. The existence of a property interest in employment is a question of law. *See Holland v. Bd. of County Comm'rs,* 883 P.2d 500 (Colo.App.1994).

■ In regulating eligibility for a type of professional employment, a state cannot foreclose a range of opportunities in a manner that contravenes due process and, specifically, in a manner that denies the right to a full, prior hearing. *Bd. of Regents v. Roth, supra.*

■ Here, plaintiff had a written contract with the District to act as head wrestling coach for the 1999–2000 season, but had no contract with CHSAA. The District contract consists of three sentences: an agreement to employ plaintiff for the 1999–2000 school year; a statement of responsibilities; and an agreement to pay a certain salary. It contains no limiting or "at will" language and no discussion of future employment. Thus, plaintiff had a property interest in his employment with the District for that year, but no property interest with CHSAA.

CHSAA contends that because it was not plaintiff's employer and had no contractual relationship with him, it did not and could not terminate his employment. It further asserts that by the time it imposed sanctions, plaintiff had already been suspended. Plaintiff, however, contends that CHSAA gave the District the choice of losing an opportunity for its wrestlers to participate in state playoffs or suspending him. Thus, plaintiff argues that CHSAA gave the administration no choice but to suspend him or punish all athletes. We conclude that even if we assume plaintiff's allegation to be true, there is no dispute that the ultimate decision to suspend plaintiff from his employment was left to the District, not CHSAA. Consequently, while genuine issues of material fact may exist regarding defendant's suspension by the District, CHSAA's conduct did not deprive plaintiff of a vested property right in his employment with the District.

### B.

Nevertheless, plaintiff alleges that when CHSAA sanctioned him without notice or opportunity to be heard, he was not granted a prompt hearing by CHSAA for purposes of due process under § 1983. He asserts this lack of a hearing adversely affected his right to work as a coach with the District or any other CHSAA school district and injured his liberty interest in his good name, reputation, honor, and integrity within the wrestling community. He also contends he was deprived of the opportunity to rectify the situation because CHSAA did not offer him an opportunity to appeal his sanction before the end of the wrestling season and refused to reconsider his sanction in light of new information provided by the District. We con-

clude that even if CHSAA did not provide a prompt review, there is no evidence that CHSAA deprived plaintiff of a liberty interest.

CHSAA's written policies provide that the date of the appeal "shall be at the regularly scheduled time of the CHSAA Executive Committee." Although the record indicates CHSAA considered plaintiff's situation at a February 23, 2000, meeting, plaintiff asserts that he was not advised whether he could appear at that meeting. However, even if that were the earliest scheduled meeting, it did not occur until after the wrestling season had ended. Further, plaintiff was allowed to appear at a hearing in the fall of 2000, and after an extensive evidentiary hearing, CHSAA's position was unchanged.

■ Moreover, a liberty interest exists in a plaintiff's good name and reputation as it affects his or her protected property interest in continued employment. To be actionable, first the statements must impugn the good name, reputation, honor, or integrity of the employee. Second, the statements must be false. Third, the statements must occur in the course of terminating the employee or must foreclose other employment opportunities. And fourth, the statements must be published. *Workman v. Jordan,* 32 F.3d 475 (10th Cir.1994); *see Hartman v. Middleton,* 974 P.2d 1007 (Colo.App.1998). Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential. To be deprived not only of present government employment, but also of future opportunity for it, is no small injury. *Bd. of Regents v. Roth, supra.*

Mere reputational injury or allegations of speculative future harm to prospective employment relationships alone are insufficient to establish such a claim. *See Phelps v. Wichita Eagle–Beacon,* 886 F.2d 1262 (10th Cir.1989); *Harrison v. Bd. of County Comm'rs,* 775 F.Supp. 365 (D.Colo.1991).

■ Here, even if we assume the alleged statements by CHSAA indicating plaintiff had been placed on restriction were published, plaintiff has presented no evidence that

CHSAA terminated his employment with the District or foreclosed future employment opportunities.

The District suspended plaintiff, and as long as that suspension continued, plaintiff could not have served as a coach even if CHSAA had lifted the restriction. Further, it is undisputed that the District suspended plaintiff before CHSAA placed him on restriction. Additionally, the effect of CHSAA's statements on other employment opportunities is speculative. In his deposition, plaintiff testified he had not sought other coaching positions for compensation since the 1999–2000 year. When asked to describe any opportunities for compensation from wrestling that he had lost, plaintiff answered, "I have not been approached, so I cannot say if I have lost anything."

Finally, CHSAA initially placed plaintiff on restriction, which was changed to probation. At his deposition, plaintiff testified that probation did not hurt his reputation as much as restriction, which injured his reputation in the eyes of fellow coaches. However, plaintiff offered no specific information on how he was injured and no evidence from fellow coaches that that was the case. *See Conaway v. Smith,* 853 F.2d 789 (10th Cir.1988)(plaintiff only generally alleged he had suffered damages to his personal and business reputation; neglect of duties and insubordination do not call into question one's good name, reputation, honor, or integrity); *Bailey v. Kirk,* 777 F.2d 567 (10th Cir.1985)(reason for suspension—failing to conduct an investigation of a police officer to the satisfaction of supervisor—insufficient to call into question plaintiff's good name, reputation, honor, or integrity). Indeed, in support of his motion to reconsider the summary judgment, plaintiff offered a letter from CHSAA, which stated, "Probation carries no penalties, which would prohibit [plaintiff] from coaching in any Colorado high school, nor does [it] prevent him from coaching in regional or state competition next season." In sum, we conclude plaintiff presented no evidence that his other employment opportunities were foreclosed. We also agree with the trial court that there is no nexus between the disciplinary action imposed by CHSAA

and the suspension of his current employment with the District.

Thus, we conclude that even if plaintiff was not granted a prompt hearing by CHSAA, it is the District, not CHSAA, that suspended him. Further, there is no evidence that any delay in the hearing process by CHSAA caused injury to a liberty interest.

### III.

We do, however, agree with plaintiff that a summary judgment was improper with respect to his claims against the District and its superintendent, principal, and athletic director. Plaintiff contends that his suspension by the District for actions or inactions of other employees while he was on temporary total disability was an abuse of discretion. Defendants point to the trial court's order concluding that the abuse of discretion claim is nothing more than a due process claim and that plaintiff was afforded due process prior to his suspension. We conclude that this is a due process claim and that material questions of fact remain.

A presumption of administrative regularity and constitutionality attaches to the multitude of personnel decisions made daily by public agencies. *Chiappe v. State Pers. Bd.*, 622 P.2d 527 (Colo.1981).

An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case. *Adams County Sch. Dist. No. 50 v. Dickey*, 791 P.2d 688 (Colo.1990).

Once it is determined that due process rights apply, the question remains what process is due. Due process is flexible and calls for such procedural protections as the particular situation demands. *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

"When a hearing is mere form, where it is merely a delusive shadow without substance, there can be no due process of law." *May Stores Shopping Ctrs., Inc. v. Shoemaker*, 151 Colo. 100, 112, 376 P.2d 679,

685 (1962). The constitutional right to a hearing is intended to provide an opportunity for a person to refute claims against him or her. *Bd. of Regents v. Roth, supra.*

Consequently, some kind of hearing is constitutionally required before the discharge of an employee who has a constitutionally protected property interest in his or her employment. *Adams County Sch. Dist. No. 50 v. Dickey, supra.*

Here, the trial court found that "the uncontroverted evidence" was that plaintiff and the athletic director met on January 18. However, the record reflects that genuine issues of material fact remain as to the nature and scope of that meeting.

Defendants contend that plaintiff met with the athletic director on two occasions before being suspended. They further assert that at these meetings, he was advised of the grounds for suspension, provided with the evidence supporting those grounds, and given time to present his side of the story. Plaintiff, however, contends that he was not afforded an opportunity to address his suspension because he never was told of his suspension. He avers that he learned of the suspension in the letter, which he read sometime after the meeting with the principal and athletic director. Even the principal's January 24 letter suggests suspension was improper. Thus, a material issue of fact exists on this issue.

Therefore, the judgment in favor of the District and District employees on plaintiff's claims for taking of a vested property right and denial of due process is reversed. The remainder of the judgment is affirmed, and the case is remanded for further proceedings in accordance with this opinion.

Judge NEY and Judge CARPARELLI concur.