Colorado Court of Appeals Opinions || November 5, 2015


Colorado Court of Appeals -- November 5, 2015
2015 COA 159. No. 14CA1348. Masters v. School District No. 1 in the City and County of Denver.



 Â 

 
 
 
 COLORADO COURT OF APPEALS

 
 2015 COA 159

 
 



 Court of Appeals No. 14CA1348
 City and County of Denver District Court No. 14CV30371
 Honorable Michael A. Martinez, Judge


 Cynthia Masters, Michelle Montoya, Mildred Anne Kolquist, Lawrence Garcia, Paula Scena, Jane Harmon, Lynne Rerucha, and Denver Classroom Teachers Association,

 Plaintiffs-Appellants,

 v.

 School District No. 1 in the City and County of Denver; Jane Goff, Valentina Flores, Debora Scheffel, Pam Mazanec, Marcia Neal, Steve Durham, and Angelika Schroeder, in their official capacities as members of the Colorado State Board of Education,

 Defendants-Appellees.


 JUDGMENT REVERSED AND CASE
 REMANDED WITH DIRECTIONS

 Division I
 Opinion by JUDGE HAWTHORNE
 Taubman and Berger, JJ., concur

 Announced November 5, 2015


 McNamara Roseman & Kazmierski LLP, Mathew S. Shechter, Todd McNamara, Denver, Colorado; Kris Gomez, Denver, Colorado; Alice OâBrien, Philip A. Hostak, Washington, D.C., for Plaintiffs-Appellants

 Lewis Roca Rothgerber LLP, Eric V. Hall, Tamara F. Goodlette, Brent R. Owen, Denver, Colorado, for Defendant-Appellee School District No. 1 in the City and County of Denver

 Cynthia H. Coffman, Attorney General, Antony B. Dyl, Senior Assistant Attorney General, Jonathan P. Fero, Assistant Solicitor General, Michelle Merz-Hutchinson, First Assistant Attorney General, David Dahl, Assistant Attorney General, Denver, Colorado, for Defendants-Appellees Jane Goff, Valentina Flores, Debora Scheffel, Pam Mazanec, Marcia Neal, Steve Durham, and Angelika Schroeder, in their official capacities as members of the Colorado State Board of Education

 Holland & Hart LLP, Anastasia A. Fainberg, Stephen G. Masciocchi, Jason A. Crow, Denver, Colorado, for Amicus Curiae Colorado SucceedsÂ 

 Â¶1Â Â Â Â Â Â Â Â  In this teachers employment case, plaintiffs, Cynthia Masters, Michelle Montoya, Mildred Anne Kolquist, Lawrence Garcia, Paula Scena, Jane Harmon, Lynne Rerucha, and Denver Classroom Teachers Association (DCTA), appeal from the district courtâs judgment granting defendantsâ[1] C.R.C.P. 12(b)(5) motion to dismiss their claims under the Colorado Constitutionâs contract clause, art. II, Â§ 11, and due process clause, art. II, Â§ 25, for failure to state a claim upon which relief can be granted. We reverse and remand.

 I. Statutory Background

 Â¶2Â Â Â Â Â Â Â Â  The Teacher Employment, Compensation, and Dismissal Act (TECDA) was enacted in 1990. Ch. 150, sec. 1, Â§ 22-63-101, 1990 Colo. Sess. Laws 1117. It repealed and re-enacted the Teacher Employment, Dismissal, and Tenure Act of 1967 (TEDTA). Id. TECDA maintained TEDTAâs distinction between probationary teachers, who must complete a three-year probationary period, and nonprobationary teachers, who have successfully completed that probationary period. See Â§ 22-63-103(7), C.R.S. 2015; Ch. 435,Â sec. 1, Â§ 123-18-12(1), 1967 Colo. Sess. Laws 979. Under TECDA, nonprobationary teachers may only be dismissed for specified reasons constituting good and just cause and only after an opportunity to be heard. Â§Â§ 22-63-301 to -302, C.R.S. 2015.

 Â¶3Â Â  In 2010, the General Assembly passed Senate Bill 10-191 (SB 191), which amended TECDA. Ch. 241, sec. 11, Â§ 22-63-202, 2010 Colo. Sess. Laws 1070. Through SB 191, the legislature changed the method for evaluating teachers and placed a new emphasis on measuring teacher effectiveness. See sec. 5, Â§ 22-9-105.5, 2010 Colo. Sess. Laws at 1056. Among other things, SB 191 added provisions linking the achievement and retention of a teacherâs nonprobationary status to certain effectiveness criteria. Sec. 10, Â§ 22-63-103(7), 2010 Colo. Sess. Laws at 1070.

 Â¶4Â Â Â Â Â Â Â Â  SB 191 maintained TECDAâs provisions that nonprobationary teachers may only be dismissed for specified reasons and only after an opportunity to be heard. See Â§ 22-63-301. It added provisions allowing a school district to remove (or displace) nonprobationary teachers from their teaching positions when a determination is made that their services are no longer required because of a âdrop in enrollment; turnaround; phase-out; reduction in program; orÂ reduction in building, including closure, consolidation, or reconstitution.â Â§ 22-63-202(2)(c.5)(VII), C.R.S. 2015; 2010 Colo. Sess. Laws at 1073.

 Â¶5Â Â Â Â Â Â Â Â  Before SB 191 was passed, TECDA required a school district to find a new position for a displaced nonprobationary teacher, and the receiving school was required to accept the teacher. See Â§ 22-32-109(1)(f)(I), C.R.S. 2015. This was known as âforced placement.â Through SB 191, the legislature replaced this procedure with a âmutual consentâ procedure whereby a displaced nonprobationary teacher may be assigned to a position at another school only with the receiving principalâs consent and input from at least two teachers at the school. See Â§ 22-63-202(2)(c.5)(I); 2010 Colo. Sess. Laws at 1070-73.

 Â¶6Â Â Â Â Â Â Â Â  Also, through SB 191, the legislature authorized the school district to place on unpaid leave any displaced nonprobationary teacher who has not secured a mutual consent position in the district within twelve months or two hiring cycles, whichever is longer. Â§ 22-63-202(2)(c.5)(IV); 2010 Colo. Sess. Laws at 1072.

 II. Facts and Procedural History

 Â¶7&Â Â Â Â Â Â Â Â  As set forth in plaintiffsâ amended complaint, plaintiff teachers were employed as full-time teachers by Denver Public Schools (DPS). With the exception of Ms. Kolquist, all the plaintiff teachers achieved nonprobationary status under TECDA before SB 191âs effective date. Ms. Kolquist also achieved nonprobationary status, but she did so after SB 191âs effective date. Plaintiff DCTA is a public employee labor organization that represents thousands of teachers employed by DPS.

 Â¶8Â Â Â Â Â Â Â Â  Plaintiffs commenced this action in Denver District Court. They pleaded two claims for relief. First, they alleged a violation of the Colorado Constitutionâs contract clause, art. II, Â§ 11. Specifically, they argued that TECDA created contracts between nonprobationary teachers and their employing school districts, and such teachers therefore have vested rights to TECDAâs employment protections. Plaintiffs claimed that TECDAâs challenged mutual consent provisions substantially impair those contractual rights insofar as they allow school districts to place nonprobationary teachers on unpaid leave without cause or a hearing. Plaintiffsâ contract clause claim is made on behalf of a proposed class ofÂ teachers who had achieved nonprobationary status under TECDA before SB 191âs effective date.

 Â¶9Â Â Â Â Â Â Â Â  Second, plaintiffs alleged a violation of the Colorado Constitutionâs due process clause, art. II, Â§ 25. Specifically, they claimed that TECDAâs for-cause dismissal protections create a protected property interest in nonprobationary teachersâ continued employment. From this, plaintiffs alleged that the challenged mutual consent provisions deprive such teachers of this property interest insofar as they permit school districts to place them on unpaid leave without a hearing, which, plaintiffs claimed, amounts to an effective discharge. Plaintiffsâ due process claim is made on behalf of a proposed class of teachers who have achieved nonprobationary status under TECDA.[2]

 Â¶10Â Â Â Â Â Â Â Â  Defendants moved to dismiss both claims under Rule 12(b)(5) for failure to state a claim upon which relief can be granted. The district court granted the motion and dismissed both claims. As to the contract clause claim, the court concluded that TECDA confersÂ no contractual rights. As to the due process clause claim, the court concluded that the mutual consent provisions, insofar as they allow school districts to place nonprobationary teachers on indefinite unpaid leave without a hearing, were neither unconstitutional on their face nor as applied.

 III. Discussion

 A. Standard of Review

 Â¶11Â Â Â Â Â Â Â Â  We review de novo a Rule 12(b)(5) motion to dismiss for failure to state a claim upon which relief can be granted. Denver Post Corp. v. Ritter, 255 P.3d 1083, 1088 (Colo. 2011). In our review, we accept as true all factual allegations in the complaint, and we view them in the light most favorable to the plaintiff. Id. We consider only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference, and matters proper for judicial notice. Id.

 Â¶12Â Â Â Â Â Â Â Â  We view Rule 12(b)(5) motions to dismiss with disfavor. Id. A complaint should not be dismissed unless it appears beyond a doubt that a claimant can prove no set of facts in support of his or her claim that would merit relief. Id.; Fry v. Lee, 2013 COA 100, Â¶18.

 Â¶13Â Â Â Â Â Â Â Â  We also review de novo questions of statutory interpretation and the constitutionality of statutes. Justus v. State, 2014 CO 75, Â¶17. We begin with the presumption that a statute is constitutional, and we will uphold the statute âunless it is proved to be unconstitutional beyond a reasonable doubt.â Id.

 B. Contract Clause Claim

 Â¶14Â Â Â Â Â Â Â Â  Plaintiffs contend that the district court erred by dismissing their contract clause claim. We agree.

 Â¶15Â Â Â Â Â Â Â Â  The Colorado Constitutionâs contract clause provides: âNo . . . law impairing the obligation of contracts . . . shall be passed by the general assembly.â Colo. Const. art. II, Â§ 11.

 Â¶16Â Â Â Â Â Â Â Â  To establish a contract clause violation, a plaintiff must show (1) the existence of a contractual relationship establishing a vested right; (2) a change in law impairing the contractual relationship; and (3) that the impairment was substantial. Justus, Â¶19; In re Estate of DeWitt, 54 P.3d 849, 858 (Colo. 2002). If each of the three inquiries is satisfied, the court must then determine whether the impairment is nonetheless justified as âreasonable and necessary to serve an important public purpose.â Justus, Â¶19 (quoting U.S. Trust Co. of N.Y. v. New Jersey, 431 U.S. 1, 25 (1977)). Thus, while designed to protect vested contractual rights from legislative invasion, the contract clause is not absolute. DeWitt, 54 P.3d at 858.

 Â¶17Â Â Â Â Â Â Â Â  A plaintiff bringing a contract clause claim must first prove the existence of a contractual relationship establishing a vested contractual right.[3]Justus, Â¶20.

 Â¶18Â Â Â Â Â Â Â Â  A presumption exists that a law is not intended to create private contractual rights, but that it merely declares a policy to be pursued until the legislature ordains otherwise. Id.; Colorado Springs Fire Fighters Assân, Local 5 v. City of Colorado Springs, 784 P.2d 766, 773 (Colo. 1989). As the supreme court stated:

 This well-established presumption is grounded in the elementary proposition that theÂ principal function of a legislature is not to make contracts, but to make laws that establish the policy of the state. Policies, unlike contracts, are inherently subject to revision and repeal, and to construe laws as contracts when the obligation is not clearly and unequivocally expressed would be to limit drastically the essential powers of the legislative body.

 Justus, Â¶20 (quoting Natâl R.R. Passenger Corp. v. Atchison, Topeka & Santa Fe Ry. Co., 470 U.S. 451, 465-66 (1985)). As the Seventh Circuit has stated, â[t]o treat statutes as contracts would enormously curtail the operation of democratic government. Statutes would be ratchets, creating rights that could never be retracted or even modified without buying off the groups upon which the rights had been conferred.â Pittman v. Chicago Bd. of Educ., 64 F.3d 1098, 1104 (7th Cir. 1995).

 Â¶19Â Â Â Â Â Â Â Â  Nevertheless, the legislature does have authority to create contractual rights. To overcome the presumption that a statute does not create such rights, the party claiming the right must show âa clear indication of the legislatureâs intent to be bound.â Justus, Â¶20 (quoting Natâl R.R. Passenger Corp., 470 U.S. at 465-66). A court ordinarily ascertains whether the legislature so intended by examining whether the statuteâs language and the circumstancesÂ surrounding its enactment or amendment show an intent to create an enforceable contractual right. Id. at Â¶21.

 Â¶20Â Â Â Â Â Â Â Â  Plaintiffs have not cited, nor have we found, any Colorado case holding that TECDA creates any contractual rights. However, the supreme court has repeatedly stated that TEDTA created contracts between school districts and their teachers. See, e.g., Julesburg Sch. Dist. No. RE-1 v. Ebke, 193 Colo. 40, 42, 562 P.2d 419, 421 (1977) (â[TEDTA] creates a contract by law between the school board and its teachers.â); Maxey v. Jefferson Cty. Sch. Dist. No. R-1, 158 Colo. 583, 586, 408 P.2d 970, 972 (1965) (â[A] tenure act has the effect of a contract between teacher and district.â); Marzec v. Fremont Cty., Sch. Dist. No. 2, 142 Colo. 83, 86, 349 P.2d 699, 701 (1960) (âThe Teacher Tenure Law . . . makes a contract for the parties by operation of the law, where otherwise none would exist.â (quoting Anderson v. Bd. of Educ. of Sch. Dist. No. 91, 61 N.E.2d 562, 567 (Ill. 1945))). On appeal, plaintiffs concede that these cases interpreted TEDTA, not TECDA. But plaintiffs claim these cases also establish that TECDA creates contracts because it preserves TEDTAâs substance â namely, the protections against discharge forÂ reasons other than the statutory causes for dismissal and provisions for hearings.

 Â¶21Â Â Â Â Â Â Â Â  We conclude that the Marzec line of cases is dispositive of the first inquiry under the Justus/DeWitt test. It is unclear precisely why the supreme court concluded that TEDTA created contracts between school districts and teachers. Nevertheless, those cases unambiguously declare that TEDTA did so. Although TEDTA and TECDA are not identical, both protect nonprobationary, or tenured, teachers from dismissal without cause. Having reviewed both TEDTAâs and TECDAâs provisions, we discern no differences between them sufficient to render the Marzec line of cases inapplicable to the determination in this case of whether TECDA creates a contractual relationship. The supreme court has not overruled the Marzec line of cases. As an intermediate appellate court, we are, of course, bound by the supreme courtâs prior precedents. Averyt v. Wal-Mart Stores, Inc., 2013 COA 10, Â¶35 (Colorado Court of Appeals is bound by decisions of the Colorado Supreme Court). Accordingly, we conclude that plaintiffs have, in this case, overcome the presumption that statutes do not create contracts.

 Â¶22Â Â Â Â Â Â Â Â  Defendants argue that TECDAâs evolution from TEDTA âindicates that the [l]egislature was moving away from â not towards â any suggestion that [TECDA] created contractual rights to continuous employment.â For support, they rely largely on the fact that neither TECDAâs title nor its substantive provisions contain the word âtenure.â However, the words âtenure,â under TEDTA, and ânonprobationary,â under TECDA, are generally regarded as synonymous in Colorado. See Widder v. Durango Sch. Dist. No. 9-R, 85 P.3d 518, 525 (Colo. 2004) (âTECDA pertains primarily to non-probationary, or tenured, teachers â the class of individuals who have the most employment protection in public schools.â) (emphasis added). Indeed, tenured status under TEDTA was achieved after a teacher had completed a probationary teaching period, and that status conferred on the teacher protections against dismissal. The same is true of nonprobationary teachers under TECDA. Thus, the terms are not legally distinguishable in the sense that the term âtenureâ is any more indicative than ânonprobationaryâ of a contractual relationship. See id.; see also Johnson v. Sch. Dist. No. 1, No. 12-cv-02950-MSK-MEH, 2014 WL 4462999, at *3 (D. Colo.Â Oct. 7, 2014) (noting that the terms ânonprobationaryâ and âtenuredâ have generally been considered synonymous).

 Â¶23Â Â Â Â Â Â Â Â  Contrary to defendantsâ suggestion, it makes no difference that the Marzec line of cases does not conduct a contract clause analysis. Those cases stand for the proposition that TEDTA created contracts between teachers and school districts. The existence of a contractual relationship is all that is required to satisfy the first inquiry under the Justus/DeWitt contract clause analysis. Justus, Â¶19 (stating that the first question in contract clause analysis is the threshold question of whether a contractual relationship exists). In our view, the Marzec line of cases compels the conclusion that such a relationship exists, which satisfies this first inquiry.

 Â¶24Â Â Â Â Â Â Â Â  We therefore conclude that the district court erred by dismissing plaintiffsâ contract clause claim under Rule 12(b)(5) for failure to state a claim upon which relief can be granted.

 C. Due Process Clause Claim

 Â¶25Â Â Â Â Â Â Â Â  Plaintiffs also contend that the district court erred by dismissing their due process challenge to the mutual consent provisions. We agree.

 Â¶26Â Â Â Â Â Â Â Â  As relevant here, the due process clause prohibits the state from depriving a person of property without due process of law. Colo. Const. art. II, Â§ 25.

 Â¶27Â Â Â Â Â Â Â Â  Before due process protections are triggered, there must be a property interest at stake. A property interest deserving of constitutional procedural protection has been defined as a âlegitimate claim of entitlementâ and has been distinguished from a mere âexpectation.â Bd. of Regents v. Roth, 408 U.S. 564, 576-78 (1972).

 Â¶28Â Â Â Â Â Â Â Â  TECDA provides that a teacher shall be on probation for the first three years of his or her employment, during which period the superintendent and the school board may elect not to renew that teacherâs contract for any reason they deem sufficient. Â§ 22-63Â­203(2)(a), (4)(a), C.R.S. 2015. In contrast, nonprobationary teachers may be dismissed only for statutorily specified reasons constituting âgood and just causeâ and only after certain procedures are followed. Â§Â§ 22-63-301 to -302. Such for-cause dismissal provisions create a constitutionally protected property interest in continued employment. Feldewerth v. Joint Sch. Dist. 28-J, 3 P.3d 467, 471 (Colo. App. 1999); see also Cleveland Bd. of Educ. v.Â Loudermill, 470 U.S. 532, 538-39 (1985) (statute providing that teachers could be dismissed only for misfeasance, malfeasance, or nonfeasance âplainly supports the conclusion . . . that respondents possessed property rights in continued employmentâ); Howell v. Woodlin Sch. Dist. R-104, 198 Colo. 40, 45, 596 P.2d 56, 60 (1979) (â[A] grant of tenure by its nature engenders a reasonable and objective expectancy of continued employment.â), overruled on other grounds by deKoevend v. Bd. of Educ., 688 P.2d 219 (Colo. 1984).

 Â¶29Â Â Â Â Â Â Â Â  Having acquired a property interest in continued employment, nonprobationary teachers may not be deprived of that interest without adequate process. A teacher is deprived of that interest when his or her employment has been terminated. See Frey v. Adams Cty. Sch. Dist. No. 14, 804 P.2d 851, 855 (Colo. 1991) (The constitution ârequire[s] a hearing before the employment of a person who has once acquired status as a tenure[d] teacher can be terminated.â); Feldewerth, 3 P.3d at 471 (stating that due process requires a nonprobationary teacher be given notice and a hearing before any dismissal may take place).

 Â¶30Â Â Â Â Â Â Â Â  Defendants and amicus curiae Colorado Succeeds argue that the legislature has plenary power to confer, modify, and even takeÂ away protected property interests it previously created. From this, they claim that the legislature may also modify the property interest, as it did in this case, by adding the mutual consent provisions alongside TECDAâs for-cause dismissal provisions. As Colorado Succeeds put it, â[t]he legislature amended the benefits it had conferred through TECDA by providing that when non-probationary teachers are displaced from a school rather than dismissed from a district, they are entitled to different benefits . . . .â

 Â¶31Â Â Â Â Â Â Â Â  Plaintiffs do not dispute the legislatureâs plenary power to confer and take away property rights. But they claim the legislature did not exercise that authority here. Plaintiffs point out that the for-cause dismissal provisions, which give rise to the protected property interest in continued employment, existed prior to SB 191 and were unaltered by that amendment. They claim that the addition of the provisions allowing for teachers to be placed on unpaid leave âon their face and in practice authorize an end-run around the protected property interest created by TECDAâs for-cause dismissal standard.â As characterized in their amendedÂ complaint, plaintiffs equate being placed on unpaid leave with an âeffective dischargeâ or termination.

 Â¶32Â Â Â Â Â Â Â Â  We agree with plaintiffs that the legislature left unaltered TECDAâs for-cause dismissal provisions, which give rise to a protected property interest in continued employment. But we disagree with plaintiffs that being placed on unpaid leave is the same as being dismissed. Unpaid leave is distinct from dismissal, and TECDA treats the two categories differently. SB 191 created a subclass of nonprobationary teachers â those placed on unpaid leave â and it affords this subclass fewer protections than other nonprobationary teachers enjoy.

 Â¶33Â Â Â Â Â Â Â Â  We acknowledge the obvious nature of unpaid leave, like dismissal, is that teachers are not paid their salaries and apparently do not receive benefits. But teachers on unpaid leave enjoy a status different than dismissed teachers. Indeed, teachers on unpaid leave retain an employment relationship with the school district, are eligible for temporary and substitute positions, and when they secure full-time employment within the district, their salaries and benefits are reinstated to the level at which they would have been had they not been placed on unpaid leave. They mayÂ also avoid the reputational stains that can be suffered by teachers who are dismissed for cause. See, e.g., Asbill v. Hous. Auth., 726 F.2d 1499, 1503 (10th Cir. 1984) (â[C]ertainly, termination from employment constitutes a âblack markâ on any employeeâs resume.â).

 Â¶34Â Â Â Â Â Â Â Â  Because TECDA treats dismissed teachers and teachers on unpaid leave differently, and because, under these circumstances, being placed on unpaid leave is not tantamount to being dismissed, we conclude that teachers who have been placed on unpaid leave have not effectively been discharged or dismissed from their teaching positions. Rather, by enacting SB 191, the legislature exercised its plenary power to amend and diminish the property rights of certain nonprobationary teachers. See McInerney v. Pub. Emps.â Ret. Assân, 976 P.2d 348, 353 (Colo. App. 1998) (holding that when a statute adjusts a statutory benefit level, procedural due process does not require notice and an opportunity to avoid the new lawâs impact; the legislative process provides all the process that is due).

 Â¶35Â Â Â Â Â Â Â Â  The remaining question is whether any source of law nevertheless requires that before a nonprobationary teacher is placed on unpaid leave, the district must afford him or her aÂ hearing. We conclude that the supreme courtâs decision in Howell does so.

 Â¶36Â Â Â Â Â Â Â Â  Howell arose under TEDTA, which provided that tenured teachers could not be dismissed except for certain enumerated reasons. See Â§ 123-18-16, 1967 Colo. Sess. Laws at 981 (repealed 1990). In 1967, the legislature amended the list of for-cause reasons justifying a tenured teacherâs dismissal to exclude the âjustifiable decrease in [the number of] teaching positions.â Id. TEDTA separately provided that a tenured teacherâs contract could be cancelled by reason of a justifiable decrease in the number of teaching positions. See Â§ 22-63-12(2)(e), 1967 Colo. Sess. Laws at 980 (repealed 1990).

 Â¶37Â Â Â Â Â Â Â Â  In Howell, the plaintiffâs contract had been cancelled without a hearing because of a decrease in the number of teaching positions. 198 Colo. at 42-43, 596 P.2d at 57-58. The plaintiff sued the school district for violating his due process rights. Id. at 43, 596 P.2d at 58. The supreme court concluded that the plaintiff was entitled to a hearing âon questions of reasonableness and preferenceâ before he could be dismissed, andÂ 

 even when fiscal exigencies are the apparent reason for a layoff, the tenured teacher whose expectations of continued employment have been disappointed, has a right to a hearing in which the teacher may show that the purported reasons for the layoff were not the actual ones or that the layoff was effected in an arbitrary or unreasonable fashion.

 Id. at 46, 596 P.2d at 60. The supreme court determined that TEDTAâs provisions allowing a tenured teacher to be dismissed âwhen there is a justifiable decrease in the number of teaching positionsâ was unconstitutional as applied absent a hearing. Id. at 42, 596 P.2d at 58 (citation omitted).

 Â¶38Â Â Â Â Â Â Â Â  Although not dismissed (or effectively dismissed) for cause, nonprobationary teachers who are placed on unpaid leave have nevertheless had their expectation of continued employment disappointed because they are not working and do not collect their salaries during the indefinite period of leave. See Lockhart v. Bd. of Educ. of Arapahoe Cty. Sch. Dist. No. 6, 735 P.2d 913, 918 (Colo. App. 1986) (âTenure, and the right to compensation which accompanies it, rises to the level of a constitutionally protected interest.â); see also Babi v. Colo. High Sch. Activities Assân, 77 P.3d 916, 922 (Colo. App. 2003) (recognizing that a property interest inÂ continued employment is violated where a tenured school employee is suspended for one month without a hearing). As one court aptly put it, â[t]he interest in continued employment would be hollow indeed if it did not secure payment, the primary benefit of being employed.â Ceko v. Martin, 753 F. Supp. 1418, 1423 (N.D. Ill. 1990). Accordingly, before being placed on unpaid leave, nonprobationary teachers have a due process right to a hearing in which the teacher may attempt to show that the purported reason for which he or she was placed on unpaid leave was not the actual reason or that the placement was effected in an arbitrary or unreasonable fashion. See Howell, 198 Colo. at 46, 596 P.2d at 60.

 Â¶39Â Â Â Â Â Â Â Â  Accepting as true plaintiffsâ allegations that none of the teachers who were placed on unpaid leave was afforded such a hearing, we conclude that the district court erred in dismissing their due process claim for failure to state a claim upon which relief can be granted.

 IV. Conclusion

 Â¶40Â Â Â Â Â Â Â Â  Accordingly, we reverse the district courtâs judgment dismissing plaintiffsâ contract clause and due process clause claims, and we remand the case to the district court with directionsÂ to reinstate plaintiffsâ amended complaint and conduct further proceedings. These proceedings include deciding, in an appropriate procedural context, (1) whether the previously unaddressed elements of a contract clause claim have been met by the plaintiffs, and (2) the ultimate question of whether a valid contract clause claim has been stated or has been proved under the rules set forth in Justus.

 JUDGE TAUBMAN and JUDGE BERGER concur.


 [1] Defendants are: School District No. 1 in the City and County of Denver and Jane Goff, Valentina Flores, Debora Scheffel, Pam Mazanec, Marcia Neal, Steve Durham, and Angelika Schroeder, in their official capacities as members of the Colorado State Board of Education.

 [2] The defendantsâ motion to dismiss was granted before plaintiffs moved to certify the class. We note that C.R.C.P. 23(c)(1) requires that â[a]s soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained.â

 [3] Defendantsâ C.R.C.P. 12(b)(5) motion to dismiss and the trial courtâs order granting that motion were limited to the first prong in the contract clause analysis, that is, whether a contractual relationship exists. Neither the parties nor the trial court addressed the two other elements of a contract clause claim or the âreasonable and necessaryâ determination, as enumerated by the supreme court in Justus v. State, 2014 CO 75, Â¶19. Moreover, the parties have not briefed these issues in this court. Because these issues involve mixed questions of law and fact, it is not appropriate for us to now decide them and we decline to do so. Those questions must be addressed and resolved by the trial court in the appropriate procedural posture. We express no opinion on the outcome of these issues or on whether the teachersâ contract clause claim ultimately is valid.




These opinions are not final. They may be modified, changed or withdrawn in accordance with Rules 40 and 49 of the Colorado Appellate Rules. Changes to or modifications of these opinions resulting from any action taken by the Court of Appeals or the Supreme Court are not incorporated here. 



Colorado Court of Appeals Opinions || November 5, 2015


Back